IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL ACTION No. 20-386 |
| | : | CIVIL ACTION No. 22-4490 |
| JON FREY | : | |

**McHUGH, J.**                                                                                                  August 14, 2023

**MEMORANDUM**

Petitioner Jon Frey pleaded guilty to distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2) and accessing child pornography with intent to view in violation of 18 U.S.C. § 2252(a)(4)(B). He received a substantial downward variance, with a sentence of 80 months as against a Guideline range of 151 to 188 months. He now moves for relief pursuant to 28 U.S.C. § 2255. Mr. Frey advances four grounds for relief, all grounded in purported ineffective assistance of counsel. The claim alleging a Fifth Amendment violation lacks merit, and the three claims aimed at the length of his sentence border on frivolous. The motion will therefore be denied.

I. Discussion

A. The *Strickland* standard

In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the petitioner.  *Virgin Islands v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).

The appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688.  Accordingly, a defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690.  There is a strong presumption that counsel has rendered adequate assistance and that all significant decisions were made in the exercise of reasonable professional judgment.  *Id*. at 689; *see also Buehl v. Vaughn*, 166 F.3d 163, 169 (3d Cir. 1999); *Reese v. Fulcomer*, 946 F.2d 247, 256-57 (3d Cir. 1991), *cert. denied*, 503 U.S. 988 (1992).  The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

Under *Strickland,* even if a defendant establishes deficient representation, he must also satisfy the second part of the test, by showing that counsel's unprofessional errors actually prejudiced the defendant.  *Strickland,* 466 U.S. at 687.  This requires that "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694; *Deputy v. Taylor*, 19 F.3d 1485, 1493 (3d Cir. 1994).  In the context of a guilty plea, the defendant must prove that there is a "reasonable probability that, but for counsel's [alleged] errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v Lockhart*, 474 U.S. 52, 59 (1985).  The Court in *Strickland* explained that "[a] reasonable probability is a probability sufficient to undermine the confidence in the outcome." 466 U.S. at 694.  A district court need not even evaluate counsel's performance

if any shortcoming would not have mattered. *See id*. at 697 (stating that, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so," the prejudice prong should be examined before the performance prong "to ensure that ineffectiveness claims do not become so burdensome to defense counsel that the entire criminal justice system suffers as a result"); *see also United States v. McCoy*, 410 F.3d 124, 132 n.6 (3d Cir. 2005).

### B. Counsel's decision not to file a suppression motion does not constitute ineffective assistance

Mr. Frey contends that after his cell phone was seized, he was entitled to be advised of his *Miranda* rights before agents asked him for the passcode. As an initial matter, the phone was seized pursuant to a search warrant authorized by the Honorable David R. Strawbridge on August 3, 2020 and filed of record at Mag. No. 20-mj-1311. Petitioner does not argue and cannot argue that the search warrant lacked probable cause. Nor does he claim that the cell phone did not fall within the scope of that search warrant. He focuses solely on whether the agents lawfully obtained the passcode to the phone.

As part of the discovery in this case, the Government provided an audio recording of the interview Mr. Frey had with agents in which he provided his passcode. He has been represented by two experienced and highly capable defense lawyers in this case, Gregory Pagano and Paul Mallis. It was well within their competence to consider whether there was any basis on which to suppress the agents' search of the phone, and they did not move to suppress.[1] Petitioner has

---

[1] The Court has listened to the audio, and it raises no Fifth Amendment concerns. The interview took place in Mr. Frey's backyard at his request to avoid being heard by his wife and children. Mr. Frey asked to see the warrant and the agents complied. He was not taken into custody, was explicitly told he was not in custody, and further advised that he was not required to talk to them. Nor was there any form of coercion or anything that could be viewed as a misrepresentation by the agents. *See United States v. Adams*, Crim. A. No. 21-144-1, 2022 WL 16531963, at *5 (E.D. Pa. Oct. 28, 2022) (McHugh, J.). This conclusion following my review of the audio warrant denial of Petitioner's Motion to Preserve Evidence, ECF 91.

3

pointed to nothing to support his contention that their decision not to file a motion to suppress reflects a lack of reasonable professional judgement.

It should be noted that in the Declaration Petitioner submitted as factual support, Ex. A to ECF 68, where he now describes the circumstances of his interview in ominous and intimidating terms, nowhere does he state that he advised his attorneys that he felt coerced or under duress when he provided his passcode.[2]

The Government is correct in observing that the defense strategy was one of cooperation in mitigation of the seriousness of the offense, starting with the application for bail, where Mr. Pagano argued that "Mr. Frey cooperated immediately with law enforcement, provided a recorded statement and submitted to a polygraph examination . . . Mr. Frey offered to surrender himself when an indictment or warrant was obtained . . . Mr. Frey did not flee from the jurisdiction despite the fact that he was informed that he would be charged and had ample opportunity to do so." ECF 12 at 5-7, Mag. No. 20-mj-1704.  After bail was initially denied, counsel echoed that theme of cooperation in his appeal to me.  ECF 11.  After Mr. Pagano withdrew, his successor, Mr. Mallis, pursued the same course.  In his sentencing memorandum, he stressed that the defendant "remained cooperative with law enforcement" and "provided a full confession." ECF 53 at 2.  He went on to emphasize that the defendant "takes full responsibility for his conduct." *Id.* at 18.  And as reflected

---

[2] It should also be noted that federal law enforcement can employ other means to search a phone, such as mobile device forensic tools (MDFTs) through companies like Cellebrite. *See, e.g.*, *United States v. Bacon*, No. 18-75, 2021 WL 5051364, at *5 (D. Del. Nov. 1, 2021) (Stark, J.) (explaining how law enforcement seized a cell phone, obtained a search warrant, and then sent the phone to Cellebrite, which used its own technology to obtain the phone's passcode); *United States v. Malave*, No. 19-218-2, 2022 WL 824009, at *3 (E.D. Pa. Mar. 18, 2022) (Smith, J.) (stating that, after law enforcement obtained a search warrant, "officers extracted and downloaded the contents and data of the LG cellphone using Cellebrite software"); *United States v. Cook*, No. 16-312, 2021 WL 1534980, at *4 (M.D. Pa. Apr. 19, 2021) (explaining that Cellebrite "released a software update that included a lock bypass" for Defendant's cell phone).

by the sentence, that strategy succeeded in securing a substantial downward variance. The decision not to file a suppression motion does not constitute ineffective assistance of counsel.

### C. Counsel competently and successfully presented mitigating evidence through a qualified expert witness

Members of Petitioner's family were seeing a psychologist starting in March 2020, Dr. Sherri Edelman. She submitted a report in support of his successful bail appeal, and upon his release began a therapeutic relationship with him. She did not testify at sentencing. Instead, Mr. Mallis retained Dean Dickson, a licensed psychologist with substantial experience in the treatment and evaluation of sex offenders, who met with Petitioner, administered tests, and then testified on a variety of issues. According to Petitioner, this was insufficient. He alleges that counsel negligently failed to investigate Dr. Edelman's credentials until his sentencing was imminent; that Dickson was consequently retained too late; and that counsel should have moved for a continuance. Mr. Frey has even identified a substitute forensic witness, unsuccessfully sought his release from custody for a meeting with her, ECF 87, submitted his own proposed release plan, ECF 77, and separately seeks an order permitting her to visit him at Fort Dix. ECF 88.

As to Dr. Edelman's purported lack of qualifications, which Frey claims led to counsel retaining Dickson, Petitioner overstates the case. He cites *United States v. Schneider,* No. CRIM.A. 10-29, 2010 WL 3734055, at *1 (E.D. Pa. Sept. 22, 2010) as a decision deeming her "uncredible." In fact, although Judge Sanchez concluded that she did not have the expertise needed to testify about the "grooming" of children for abuse, he specially found her qualified to testify to "the emotional and psychological impact of sexual abuse on children." *Id.* at *3. He ultimately did not permit her to testify for other reasons, and the focus of his analysis was criticism of the prosecution as to the basis for her testimony and whether it was a proper "fit" for the case. The Government raised no objection to her qualifications when she successfully supported Petitioner's

5

bail application, which is perhaps not surprising in that it was the U.S. Attorney's Office that had presented her to this Court as a qualified expert in *Schneider*. And in any event, Dr. Edelman's credentials were burnished by eleven additional years of professional practice and experience since *Schneider*.

Beyond that, it is clear to the Court that Mr. Dickson was retained because of his background and expertise in the evaluation of offenders, as compared to Dr. Edelman's focus on victims, and that counsel had a particular interest in Dickson's assessment of Petitioner's risk of recidivism.

Most importantly, Petitioner suffered no prejudice whatsoever by counsel's decision to call Mr. Dickson. He reviewed Dr. Edelman's records and although he discounted her risk assessment, he accepted her diagnosis of Post-Traumatic Stress Disorder. He gave compelling testimony about Mr. Frey having himself been the victim of abuse, coupled with testimony about a low risk of recidivism. I found him credible and qualified and gave considerable weight to his testimony. The sentence of 80 months Petitioner received as compared to a Guideline range of 151 to 188 months was the direct result of the capable and persuasive presentation made by counsel at sentencing. Petitioner's contention that some different, "better" forensic witness would have resulted in a separate and additional downward departure is completely divorced from the realities of his case.[3]

### D. Counsel competently presented evidence and argument about Petitioner's efforts at rehabilitation

Petitioner next argues that counsel was ineffective in not requesting downward departures under U.S. Sent'g Guidelines Manual §§ 5H1.3 and 5K2.20, and by "failing to present evidence of rehabilitative efforts." ECF 10. This claim is flatly contradicted by the record. Counsel set

---

[3] My conclusion as to this claim also warrants denial of Petitioner's Motion for authorize a forensic exam while in custody, ECF 88.

forth in detail the nature of the mental health treatment undertaken by the defendant in his sentencing memorandum, ECF 53 at 16-17, and attached letters of support that also detailed Defendant's efforts at rehabilitation. He stressed this during the sentencing hearing, stating:

> It's evident that Mr. Frey has immersed himself in a variety of treatment groups over the last eleven months. He's dedicated hundreds of hours to treatment. Out of all the character reference letters we've sent, several of them were from other members in his support groups that said what a leadership role he's taking. He's been a sponsor to these other members.

Tr., Nov. 16, 2021, 98:7-13.

In varying downward – and substantially so – the Court achieved the same result as would have come from a departure and did so because of the *effectiveness* of counsel. Petitioner's criticism of counsel is devoid of merit.

### E. Petitioner's argument concerning allocution is speculative and unfounded

Finally, Mr. Frey contends that if his counsel had properly "coached" him, then his allocution would have been "limited" and his sentence shorter as a result. This argument fails for several reasons. First, capable defense attorneys well understand that the most compelling presentation at sentencing often comes from a defendant himself. In *Green v. United States*, 365 U.S. 301, 304 (1961), the Supreme Court itself recognized that "[t]he most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." Courts must therefore show particular deference to the professional judgment of counsel on such issues.

Second, as discussed below, previous interactions with Mr. Frey revealed him to be in no respect shy about advocating for himself before the court. When such a defendant then says nothing on his own behalf in allocution, a savvy judge may well draw an inference that the defendant was indeed "coached" by counsel precisely because of the risk that the judge would not be impressed.

Third, this argument assumes that Mr. Frey would have followed his lawyer's advice, something that cannot be lightly assumed based on the Court's experience in this case. And it further assumes that some other allocution would have been more persuasive.

Finally, well before allocation, while Mr. Frey was at home on pretrial release, he took it upon himself to write a lengthy self-serving letter to the Court at the time of his guilty plea. As the Government pointed out in its sentencing memorandum, ECF 55 at 17-19, Mr. Frey "brazenly and shamelessly" sought to excuse his behavior, in part cloaked in his religion. To the extent that the Court commented on his lack of self-awareness at sentencing, those qualities were already on display well before allocution, and beyond the control of any lawyer.

## II.   Conclusion

For the reasons set forth above, the petition for relief will be denied in its entirety, and no certificate of appealability will be granted.

  /s/ Gerald Austin McHugh<br>
United States District Judge